FRIEDR. ZOELLNER (NEW YORK) CORPORATION, Plaintiff-Appellant,

v.

TEX METALS COMPANY, Defendant-Appellee.

No. 491, Docket 32147.

United States Court of Appeals Second Circuit.

Argued May 14, 1968.

Decided June 12, 1968.

Elliott J. Solomon, New York City (Garfield, Salomon & Mainzer, New York City, on the brief), for appellant.

Thomas F. Curnin, New York City (Lawrence J. McKay, Mathias E. Mone, and Cahill, Gordon, Sonnett, Reindel & Ohl, New York City, on the brief), for appellee.

Before MOORE, HAYS and FEINBERG, Circuit Judges.

HAYS, Circuit Judge:

Appellant, Friedr. Zoellner (New York) Corporation, brought suit in the Supreme Court of New York against Tex Metals Company seeking damages for breach of a joint venture agreement. Tex Metals was served with the summons and complaint in Corpus Christi, Texas. The action was removed to the district court below pursuant to 28 U.S. C. § 1441 (1964) on the ground of diversity of citizenship. Thereafter, on motion of Tex Metals, the district court dismissed the complaint for lack of personal jurisdiction over the defendant. We affirm.

Zoellner is a New York corporation engaged in importing and exporting metals and ores. Tex Metals, a division of Western Metals Co., a Texas corporation, purchases and sells scrap metal as a broker. At an industry convention in Washington, D. C., in January, 1966 officers of Zoellner and Tex Metals discussed the possibility of entering into an agreement concerning the purchase and resale of certain scrap metals. Negotiations continued in a series of telephone calls between Texas and New York, and in February, 1966, during the course of one of these calls, an oral agreement was concluded.

The agreement provided that Tex Metals would purchase scrap metal from sources unknown to Zoellner and ship it to a warehouse rented by Tex Metals in the free trade zone in New Orleans. The metal purchased was to be invoiced from Tex Metals' office in Corpus Christi to Zoellner in New York. On its part, Zoellner would locate customers (whose identities were not known to Tex Metals), arrange for financing, and issue shipping instructions. Profits were to be divided equally. Both parties remained free to deal with others.

After a few months Zoellner became dissatisfied with the venture, principally because it appeared that a significant amount of inventory was missing from the New Orleans warehouse. In November, 1966 the President of Tex Metals and his attorney met with representatives of Zoellner in New York to discuss the differences between the parties. No satisfactory settlement could be reached, and this suit followed.

To determine whether the district court had jurisdiction over Tex Metals we must look to New York law:

"The jurisdiction of a federal district court over an action removed from a state court under 28 U.S.C. § 1441 depends upon the jurisdiction of the state court before the removal. If the state court lacked jurisdiction, the federal court acquired none, Lambert Run Coal Co. v. Baltimore & O. R. R., 258 U.S. 377, 382, 42 S.Ct. 349, 66 L.Ed. 671 (1922); Venner v. Michigan Cent. R. R., 271 U.S. 127, 131, 46 S. Ct. 444, 70 L.Ed. 868 (1926)." Liquid Carriers Corp. v. American Marine Corp., 375 F.2d 951, 953 (2d Cir. 1967).

Zoellner relies on two subsections of New York's "long arm" statute

to establish jurisdiction. The first, N.Y. CPLR § 302(a) (1), gives the New York courts jurisdiction over a non-domiciliary who "transacts any business within the state" as to causes of action arising from such business. The activities of Tex Metals in New York were limited to those described above. Tex Metals did not maintain an office, warehouse, telephone listing or bank account in New York, did not solicit orders in New York, and did not ship goods into the state. We believe that the New York courts would find Tex Metals' connections with New York insufficient to constitute the transaction of business within the state. In McKee Electric Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967), McKee, a distributor of Rauland-Borg's sonic equipment, brought suit for breach of the distributorship agreement. The original agreement, which had been renewed several times, was negotiated and perhaps entered into in New York. Rauland-Borg had shipped its products into the state for years. Furthermore, Rauland-Borg had sent officials into New York on several occasions for the purpose of alleviating the frictions between McKee and certain consulting engineers which ultimately led Rauland-Borg to cancel the distributorship agreement. Despite these not insubstantial activities within the state, the court held that Rauland-Borg had not transacted business within the state within the meaning of Section 302. See also Standard Wine & Liquor Co. v. Bombay Spirits Co., 20 N.Y.2d 13, 281 N.Y.S.2d 299, 228 N.E.2d 367 (1967), affirming 25 A.D.2d 236, 268 N.Y.S.2d 602 (1st Dep't 1966); M. Katz & Son Billiard Products, Inc. v. G. Correale & Sons, Inc., 26 A.D.2d 52, 270 N.Y.S.2d 672 (1st Dep't 1966), aff'd mem., 20

N.Y.2d 903, 285 N.Y.S.2d 871, 232 N.E.2d 864 (1967).

■ Zoellner asserts that its business transacted in New York in furtherance of the joint venture should be attributed to Tex Metals for the purposes of Section 302(a) (1). Whatever force this argument might have in an action brought by some third party who had dealt with the joint venture is absent in this suit between the joint venturers themselves. See Balogh v. Rayner-Smith, 51 Misc.2d 1089, 274 N.Y.S.2d 920 (Sup.Ct.1966) (partnership).[1]

Zoellner also seeks by characterizing its suit as one for the tort of conversion to establish jurisdiction under Section 302(a) (3) (ii) of the CPLR. That section gives New York courts jurisdiction over a non-domiciliary who "commits a tortious act without the state causing injury to person or property within the state * * * if he * * * expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." The legislative history indicates that this section was enacted to fill the gap caused by the decision of the New York Court of Appeals in Feathers v. McLucas, 15 N.Y.2d 443, 458–464, 261 N.Y.S.2d 8, 19–24, 209 N.E.2d 68 (1965), finding no jurisdiction over a Kansas manufacturer of a propane gas tank which exploded in New York causing property damage and personal injuries. See Judicial Conference Report on the Civil Practice Law and Rules, 2 McKinney's 1966 Session Laws of New York, pp. 2780, 2787–2788; Memorandum of the Judicial Conference, id. at 2911; Reese, A Study of CPLR 302 in Light of Recent Judicial Decisions, Eleventh Annual Report of the Judicial Conference of the State of New York 132–39 (1966).

---

1. Application of the rule of Schneider v. J and C Carpet Co., 23 A.D.2d 103, 258 N.Y.S.2d 717 (1st Dep't 1965), which held that in an action by an agent against his principal the agent's acts in New York constituted transaction of business by the principal in New York within the meaning of § 302(a) (1), has been confined to cases of exclusive agency. See A. Millner Co. v. Noudar, Lda., 24 A.D.2d 326, 266 N.Y.S.2d 289 (1st Dep't 1966).

■ Zoellner lost its scrap metal in New Orleans. The process of reasoning by which Zoellner seeks to convert this New Orleans injury into an injury within New York defies restatement. However, even if it is assumed that some injury in New York flowed from the New Orleans injury, jurisdiction would be lacking. Section 302(a) (3) is not satisfied by remote or consequential injuries which occur in New York only because the plaintiff is domiciled, incorporated or doing business in the state. See Black v. Oberle Rentals, Inc., 55 Misc.2d 398, 285 N.Y.S.2d 226 (1967).

Order affirmed.