Carrollton A. Roberts, J.
This is a motion to dismiss a complaint for the alleged failure by plaintiff to acquire in personam jurisdiction of the defendant Manheim Auto Auction Inc. Plaintiff alleges the conversion of an automobile in derogation of its title to the automobile allegedly reserved in a filed security agreement. It is alleged that Richardson, the conditional vendee of the automobile, delivered the autombile to the defendant Manheim Auto Auction Inc., for the purpose of selling the automobile at a public auction conducted by Manheim. In paragraph “ Tenth ” plaintiff characterizes the defendant Manheim11 as auctioneer and/or purchaser of said automobile ” and that,- as such, Manheim ‘ ‘ was acting as agent and/or employee of the defendant, Richie B. Richardson.” Paragraph “Fourth” of the complaint alleges that defendant Manheim “ is a foreign corporation duly organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania, having its principal place of business at Manheim, Pennsylvania.” Admittedly, Manheim was served in Pennsylvania and jurisdiction over the person of Manheim can be preserved, if at all, solely by virtue of CPLR 302.
Two paragraphs of CPLR 302 are asserted by plaintiff as bases for jurisdiction in this case. First, plaintiff relies on CPLR 302 (subd. [a], par. 1) which permits jurisdiction over a nondomiciliary who transacts any business within the State. Second, plaintiff relies on the 1966 amendment to CPLR 302 which provides in paragraph 3 of subdivision (a) for jurisdiction over any nondomiciliary who ‘ ‘ commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or *746 derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce ”. (Italics supplied.)
The affidavits before this court indicate the following with regard to the operation of Manheim as an auto auction center: (1) For a yearly charge, allegedly in the amount of $15> automobile dealers in New York and indeed throughout the country will receive a weekly market report published by defendant Manheim detailing the makes and prices of various automobiles traded. (2) Special invitations are sent periodically to dealers in New York and throughout the country announcing auction sales for various makes of automobiles. (3) By admission of Richard M. Martin, the general counsel for Manheim, ‘ ‘ there may have been isolated incidents when dealers or organizations were approached concerning marketing of cars at our Auction, but this is not a regular procedure.”
In rebuttal to the foregoing, the attorney for Manheim states in a reply affidavit that ‘ ‘ apparently the Manheim Auto Auction, Inc., does publish a market report to subscribers, but such market report is not for the purpose of soliciting and obtaining business for the Manheim Auto Auction, Inc., but is merely sent out for the purpose of giving information to various automobile dealers relative to the wholesale prices of automobiles so that such dealers may govern themselves accordingly in purchasing various used automobiles in their localities.” It appears, however, that the market lists sent to subscribers at' the very least serve a dual function insofar as each list submitted to this court, in addition to quoting prices, advertises the sale of various types of automobiles. Moreover, the market reports sent to subscribers by Manheim state in the caption that Manheim is “ the nation’s finest and largest auto auction.” The inference is raised by the format of the market reports and the special sale announcements that a substantial amount of Manheim’s revenue is derived from interstate commerce. The question is whether the foregoing provides a sufficient basis for establishing jurisdiction under either paragraph 1 or 3 of subdivision (a) of CPLR 302.
The first question to be considered is whether the solicitation of business by the circulation of market reports and announcement of sales in New York where the sales are admittedly to be held in Pennsylvania can amount to a transaction of business under CPLR 302 (subd. [a], par. 1). The mere solicitation of business in New York without more has been held insufficient *747 to provide the jurisdictional basis set forth in CPLR 302 (subd. [a], par. 1). Greenburg v. R. S. P. Realty Corp. (22 A D 2d 690) granted a motion to dismiss where the defendant operated a resort and hotel in New Jersey, advertised in New York publications and set forth a New York telephone number, which number also was listed in the New York directory. By using this number, a person in New York could obtain a direct connection with the defendant in New Jersey and presumably in the instant case this procedure was followed by the plaintiff in making a reservation with defendant in New Jersey. Concluding that this did not provide a jurisdictional basis, the court commented that “ there is no proof that the defendant’s agents or employees were physically present in New York. In our opinion the defendant did not have the minimum contacts in New York required for acquisition of jurisdiction over it in personam ”.
It has been held that the shipment of goods into New York in addition to other minimum contacts could provide a jurisdictional basis under CPLR 302 (subd. [a], par. 1). Thus in Bard v. Steele (28 A D 2d 193, 195) the court stated: “ Concededly, transactions limited to the shipment of goods, with no showing of any other contact with the foreign State, do not meet the test thus imposed. (Kramer v. Vogl, 17 NY 2d 27.) It is now enough, however, that the defendant 1 have certain minimum contacts with it such that the maintenance of the suit does not offend “traditional notions of fair play and substantial justice.” ’ (International Shoe Co. v. Washington, 326 U. S. 310, 316; Longines-Wittnauer Watch Co. v. Barnes & Reinecke [15 NY 2d 443, 453-454, cert. den. 382 U. S. 905.].) Such ‘ minimum contacts ’ are not necessarily to be inferred from the fact that appellant has a substantial business with New York residents but that circumstance may be of some significance when considered with the proof of appellant’s maintenance of a New York telephone line to its Hackensack office and its use of a Manhattan telephone number and listing, which facts alone constitute at least a ‘ minimum contact ’ and must certainly be considered ‘ some act by which the defendant purposely avails itself of the privilege of conducting activities within the foreign State, thus invoking the benefits and protections of its laws.’ (Hanson v. Henchia, 357 U. S. 235, 253.) ”
Similarly, it was held by a Special Term of this court in Maggio v. Gym Master Co. (54 Misc 2d 845, 847), that “ the solicitation of business in New York by means of catalogs, advertisements, or other promotional material circulated here, when coupled with the shipment of goods into the State, will *748 serve as a basis for jurisdiction under CPLR 302 (subd. [a], par. 1).” We are faced here, however, with a commercial tort, the action nexus of which admittedly is centered in Pennsylvania albeit with alleged damage or injury consequence in New York. No goods are being shipped into the foreign State and in fact the automobile in question obviously was delivered into the State of Pennsylvania to the defendant Manheim. What we are left with then, at best, is simply the solicitation of business in New York by means of advertisements, market quotations, and notices of sale. This, without more, is not enough to provide a jurisdictional basis under CPLR 302 (subd. [a], par. 1). In addition it is well settled that “ in order for this case to come within the area of CPLR 302 (subd. [a], par. 1), the particular transaction of business within the State must have resulted in the cause of action. In other words, any unrelated business in New York would not furnish sufficient grounds to hold defendants liable for these particular causes under 302 ”. (Schroeder v. Loomis, 46 Misc 2d 184, 186.) Accordingly, CPLR 302 (subd. [a], par. 1) is of no help to plaintiffs in the case at bar in preserving jurisdiction.
Turning to CPLR 302 (subd. [a], par. 3), it appears to this court that the affidavits and exhibits attached thereto establish that the defendant Manheim regularly solicits business in the State of New York. Where a defendant solicited business in New York by use of trade journal advertising and was engaged nationally in the solicitation of business, the court in Newman v. Charles S. Nathan Inc. (55 Misc 2d 368) denied a motion to dismiss, stating that “ we therefore have a situation where a cause of action arising from a tortious act without the State causes injury to a person within the State and where the non-domiciliary third-party defendant admittedly solicits business in this State. This alone would warrant jurisdiction under CPLR 302 (subd. [a], par. 3, cl. [i]).”
In addition, the papers before this court raise the strong inference that the defendant Manheim derives substantial revenue from interstate commerce and by virtue of its self-advertised claim as the “ nation’s finest and largest auto auction ” the inference is also raised that Manheim expects or should reasonably expect the act in question to have consequences in the foreign State. On this motion, Manheim has not come forward with any proof to rebut either the question of reasonable expectation as to the ¡consequences in this State or the inference that substantial revenue has been derived by it from interstate commerce. Where a corporation in another lawsuit failed to rebut these inferences, the court denied a motion to dismiss for juris *749 ¿fictional deficiency. (Gillmore v. J. 8. Inskip, Inc., 54 Misc 2d 218, 223.)
It seems to this court that the amendment to the CPLR 302 embodied in paragraph 3 of subdivision (a) may have hit some targets other than those intended. Obviously, the amendment was intended to provide a jurisdictional basis for the traditional products liability or negligence action where goods are manufactured out of State, allegedly defectively, and are shipped into this State, and then used by a domiciliary who suffers injury, or used out of State by a New York domiciliary who suffers injury. In many of these cases there was the question as to where the tort was committed — whether in New York State at the time of injury or out of State at the time of manufacture. While this is an oversimplification it seems to this court that it does illustrate the principal situation intended to be rectified by the amendment to CPLR 302. The tort in question, however, as noted above, is commercial in nature, contractual if you will. No goods are being shipped into New York State; in fact, the action nexus, to the contrary, is in Pennsylvania. The thrust of the actions relied upon by the plaintiff to provide his cause of action on the merits, at least with respect to defendant Manheim, was directed out of New York and into Pennsylvania. Moreover, the salutary effect of the statute as a device for assisting domiciliaries in prosecuting litigation in their local courts, presumably at a minimum expenditure of time and money, certainly makes little sense where the plaintiff is a large corporation with national affiliates, qualified and able to do business throughout the country, which easily could litigate in Pennsylvania, if the need to do so arose. Nonetheless, on the language of CPLR 302 (subd. [a], par. 3) it seems to this court that plaintiff has established a jurisdictional basis to acquire in personam jurisdiction over defendant Manheim. Regardless of who the plaintiff may be in terms larger than the mere definition of domicile, defendant Manheim remains a large auctioneer with contacts throughout the Nation including the deliberate solicitation of business in New York; as such Manheim should be able with a minimum of difficulty to defend this lawsuit in New York.
The motion to dismiss is therefore denied.