**STERLING NATIONAL BANK & TRUST COMPANY OF NEW YORK, Plaintiff,**

v.

**SOUTHERN SCRAP EXPORT CO., Southern Scrap Material Co., Commercial Metals Co., and the Kunsul Co., Defendants.**

No. 78 Civ. 3604.

United States District Court, S. D. New York.

March 30, 1979.

David J. Minder, New York City, for plaintiff.

Howard I. Rhine, R. Jeffrey More, Zimet, Haines, Moss & Goodkind, New York City, for defendants.

## OPINION AND ORDER

PIERCE, District Judge.

This is an action for conversion in which two defendants now move to dismiss the complaint for lack of personal jurisdiction.

Most of the facts are not controverted. Plaintiff Sterling National Bank and Trust Company ("Sterling") is a New York bank. Defendant Southern Scrap Material and its wholly owned subsidiary defendant Southern Scrap Export (hereinafter collectively referred to as "Southern Scrap") are Louisi-

ana corporations with their principal places of business in New Orleans. On September 7, 1977, Sterling entered into loan agreements with Metric Metals International Inc. ("Metric"), a corporation located in New York.[1] The agreements granted Sterling a security interest in all of Metric's then existing and thereafter acquired inventory and accounts receivable.

On or about May 2, 1978, Metric contracted to buy certain copper goods from Southern Scrap Export at a price in excess of $200,000. The contract contained a printed arbitration clause providing that:

> "Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration in accordance with the Rules of the American Arbitration Association in the City of New York, and the judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof."

The goods were then delivered by Southern Scrap and accepted by Metric. Plaintiff alleges that, with full knowledge of Sterling's interest in the goods as after-acquired inventory and at a time when Metric was in default of its obligations to Sterling, Southern Scrap wrongfully repossessed and converted the goods. Southern Scrap apparently sold the goods to defendant Commercial Metal Co., a Delaware corporation with its principal place of business in Texas, and defendant Kunsul Co., a Korean corporation with its principal place of business in that country.

Sterling has made demand upon each defendant for the return and possession of the goods, without success. Plaintiff Sterling claims that Metric is still indebted to Sterling in an amount in excess of the contract price of the goods. Thus, Sterling brings this action for conversion, alleging that it has been damaged in the amount of the contract price of the goods by having been deprived of its security interest therein.

*Discussion*

Both Southern Scrap defendants move for an order pursuant to Fed.R.Civ.P. 12(b)(2) dismissing this action against them on the ground that this Court lacks personal jurisdiction over them. In support of this position, the president and vice president of Southern Scrap have submitted affidavits stating that neither moving defendant has any officers, employees, bank account, telephone listing, warehouse or property in New York, and neither solicits business in this state. They also state that the contract with Metric was initiated by a telephone call from Metric, that no Southern Scrap personnel ever came into New York State in connection with the contract, and that Southern Scrap's only connection with New York regarding the contract was an exchange of telephone calls, mail and telexes with Metric. Finally, the affidavits state that neither the goods nor any bills of lading with respect to them ever came into New York State, nor has Southern Scrap ever received any payment from Metric for the goods.

In response, Sterling advances three separate grounds upon which it argues that this Court has jurisdiction over Southern Scrap:

1. By executing a contract providing for arbitration in New York, the moving defendants have consented to personal jurisdiction in this Court.

2. Defendants' acts of conversion constituted tortious acts committed without the state which cause injury to persons or property within the state as contemplated by CPLR 302(a)(3)(ii).

3. Defendants' contacts with New York through their business relationship with Metric constituted transacting business in New York within the scope of CPLR 302(a)(1).

## I.

Plaintiff's first argument is that by signing contracts containing a clause providing for arbitration in New York of disputes arising out of the contracts, defendants

---

1. Metric is not a party to this action.

have consented to the jurisdiction of this Court for purposes of the present lawsuit.

▮ However, it has been held that such an arbitration clause is normally deemed to be a consent to the jurisdiction of the state or federal court only with regard to the enforcement of the arbitration clause itself, not with regard to any other dispute that may arise between the parties.[2] *Insurance Co. of North America v. S/S Jotina*, 1974 A.M.C. 1190 (S.D.N.Y.1974); *Aero-Bocker Knitting Mills v. Allied Fabrics*, 54 A.D.2d 647, 387 N.Y.S.2d 635 (1st Dep't 1976). In *Aero-Bocker*, the Court rejected jurisdiction in spite of the presence of an arbitration clause which could have been read to be a broader consent to jurisdiction than the present one before this Court. The New York court said:

> "Clause 10, entitled 'ARBITRATION,' provides in pertinent part, for arbitration of any dispute or controversy to be conducted in New York City and the parties consent to the jurisdiction of the Supreme Court of the State of New York and to the Federal District Court for the Southern District of New York. The only fair reading of the clause is that the jurisdictional designation applies only to arbitration proceedings." *Id.* at 648, 387 N.Y.S.2d at 637.

By contrast, the clause in the case at bar provides only that "the judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof."

The cases cited by Sterling are inapposite since the relief sought therein was an order compelling arbitration, an order confirming an arbitration award, or an order staying an action pending arbitration. See *Merrill Lynch, Pierce, Fenner & Smith v. Lecopu-*

*los*, 553 F.2d 842 (2d Cir. 1977); *Comprehensive Merchandising Catalogs, Inc. v. Madison Sales Corp.*, 521 F.2d 1210 (7th Cir. 1975); 8 Weinstein, Korn & Miller, *New York Civil Practice* ¶ 7501.34 (1971). Plaintiff also relies on *Intermeat, Inc. v. American Poultry, Inc.*, 575 F.2d 1017 (2d Cir. 1978) which, however, did not involve the question of consent, but merely held that an agreement to arbitrate in New York could be counted among the minimal contacts necessary to make an attachment constitutional under the standard recently set down in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).

▮ In addition, Southern Scrap has consented to arbitrate only with respect to matters "arising out of or relating to the contract." In an action involving similar facts, a New York court commented:

> "Although this clause would be applicable respecting a claim brought in contract, it has no application to Standard's claim which sounds in the tort of conversion. The alleged conversion by Synergal subsequent to the contract constitutes an undisputed act not arising out of the contract. Recognition that the contract created the property rights which were violated by Synergal's conversion does not render indistinct the fact that the conversion is a dispute outside of that contract." *Fantis Foods, Inc. v. Standard Importing Co.*, 63 A.D.2d 52, 58, 406 N.Y.S.2d 763, 767 (1st Dep't 1978).

If the issues in an action are centered largely around the performance or nonperformance of the particular terms of a contract, a party should not be able to evade an arbitration clause by casting the action as one in tort. *Altshul Stern & Co. v. Mitsui Bus-*

---

**2.** Plaintiff Sterling is not even a party to the contract containing the arbitration clause. An assignee of a contract containing an arbitration clause may become a party to such a provision, *Fisser v. International Bank*, 282 F.2d 231, 233 (2d Cir. 1960), and ordinary contract principles determine who will be bound. · *Interocean Shipping Co. v. National Shipping and Trading Corp.*, 523 F.2d 527, 539 (2d Cir.), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976). In the present case, there is no allega-

tion that Metric has assigned its contract to Sterling. Metric appears to have merely granted Sterling a security interest in its existing and after-acquired inventory and accounts receivable. Whether under U.C.C. Art. 9 Metric's actions have amounted to an assignment of Metric's contracts with Southern Scrap is a question which was not addressed by the parties and which this Court does not find necessary to consider.

*san Kaisha, Ltd.,* 385 F.2d 158 (2d Cir. 1967). But in the case at bar performance is not at issue. The party asserting jurisdiction concedes that the goods were delivered and accepted. The sole charge, as in *Fantis,* is that the goods were thereafter converted. The Second Circuit's reasoning in *Old Dutch Farms, Inc. v. Milk Drivers & Dairy Employees Union,* 359 F.2d 598, 601, 603 (2d Cir. 1966) is equally applicable here:

> "[N]othing in the broad arbitration clause involved here commits to arbitration disputes which are unrelated to the interpretation of particular provisions of the collective agreement or to the subject matter of the agreement. . . . Reason dictates that for a dispute to be characterized as germane to the subject matter of the contract it must at the very least raise some issue, the resolution of which [involves] a reference to, or construction of some portion of the contract involved. . . . [T]he present suit . . . does not raise any question of contract interpretation which can be characterized as particularly suited for arbitration."

Accordingly, the Court finds that jurisdiction cannot be based on the arbitration clause in the contract between Metric and Southern Scrap.

## II.

Sterling also argues that this Court has jurisdiction over Southern Scrap pursuant to CPLR 302(a)(3)(ii). CPLR 302(a)(3)(ii) provides:

> "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent:

> "3. commits a tortious act without the state causing injury to person or property within the state . . . if he (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."

Sterling concedes that any alleged acts of conversion were committed without New York State, but claims that Sterling was injured in New York when it "suffered a pecuniary loss by reason of its having been deprived of the goods as to which it had been granted a security interest by Metric."

A number of cases in this circuit have held that in the case of conversion, the acts and the injury coalesce so that the injury occurs not in New York where the plaintiff is domiciled, but at the place where the critical events took place. *Friedr. Zoellner (New York) Corp. v. Tex Metals Co.,* 396 F.2d 300, 303 (2d Cir. 1968)[3]; *Security National Bank v. Ubex Corp.,* 404 F.Supp. 471, 474 (S.D.N.Y.1975); *Chemical Bank v. World Hockey Ass'n,* 403 F.Supp. 1374, 1380 (S.D.N.Y.1975).

The *Chemical Bank* case presents a fact situation very similar to this action. In *Chemical Bank,* plaintiff claimed that defendants interfered with their security interest in a New York hockey franchise. Two of the defendants who were Maryland domiciliaries moved to dismiss for lack of personal jurisdiction. In granting the motion to dismiss, the Court held that "the mere fact that, due to plaintiff's being located in New York, it experienced financial consequences here, is not sufficient basis for jurisdiction under the relevant statutory provision." *Chemical Bank v. World Hockey Ass'n,* 403 F.Supp. 1374, 1380 (S.D.N.Y. 1975).[4]

---

**3.** In *Friedr. Zoellner (New York) Corp. v. Tex Metals Co.,* 396 F.2d 300, 303 (2d Cir. 1968), the Court stated:

> "Zoellner lost its scrap metal in New Orleans. The process of reasoning by which Zoellner seeks to convert this New Orleans injury into an injury within New York defies restatement. However, even if it is assumed that some injury in New York flowed from the New Orleans injury, jurisdiction would be lacking. Section 302(a)(3) is not satisfied by

remote or consequential injuries which occur in New York only because the plaintiff is domiciled, incorporated or doing business in the state."

**4.** But see *General Motors Acceptance Corp. v. Richardson,* 59 Misc.2d 744, 300 N.Y.S.2d 757 (Sup.Ct.1969). In *General Motors,* plaintiff alleged conversion of an automobile in derogation of its title allegedly reserved in a filed

However, the rationale of the *Chemical Bank* line of cases has been criticized recently in a New York case, *Fantis Foods, Inc. v. Standard Importing Co.,* 63 A.D.2d 52, 406 N.Y.S.2d 763 (1st Dep't 1978).[5] In *Fantis,* Standard, the third-party plaintiff, was a New York corporation which imported Greek *feta* cheese. Standard had contracted to buy 1200 barrels of cheese from Synergal, the third-party defendant, which had a monopoly on the export of *feta* cheese from Greece. After Standard had accepted delivery in Greece by giving its certificate attesting to the weight and composition of the cheese, Synergal proceeded to sell and deliver 900 of the 1200 barrels to a New York competitor of Standard. The New York court found that Synergal's action deprived Standard of profits from the sale of the cheese and injured Standard's competitive position in New York, and held that the conversion caused injury in New York within the meaning of CPLR 302(a)(3). In reaching this conclusion, the court stated:

"Viewing the statute as primarily aimed at negligence type situations involving personal injuries or property damage, the approach opted for by the aforementioned federal cases is to distinguish commercial tort type situations, and insofar as conversion is concerned, to restrict in severe fashion the operative effect of the long-arm statute. It may well be that the protective features of New York's long-arm statute regarding foreseeability and the deriving of substantial revenue from interstate or international commerce have been undervalued or unappreciated. It suffices to state in the context of the present record that CPLR 302(a)(3)(ii) draws no distinction between commercial and non-commercial type situations." *Id.* at 57, 406 N.Y.S.2d at 766.[6]

▮ This Court does not reach the question of whether the *Chemical Bank* or *Fantis* interpretations of the statute represent that of the New York State Court of Appeals.[7] Rather, this Court notes that the

security agreement. The conditional vendee of the automobile delivered it to defendant Manheim, a Pennsylvania auctioneer, who then sold the automobile. Although the New York court noted that the holding seemed to be beyond the intended legislative scope of CPLR 302(a)(3), it stated without any discussion that "on the language of CPLR 302(a)(3) it seems to this Court that plaintiff has established a jurisdictional basis to acquire in personam jurisdiction over defendant Manheim." *Id.,* at 749, 300 N.Y.S.2d at 762. However, the constitutionality of this lower court decision has been questioned:

"The conclusion reached by the court seems to assume that if the plaintiff is in New York when the injury occurs, the injury must occur in this state. The potential of so sweeping a doctrine is enormous, and it is suggested, in many cases would violate due process." J. McLaughlin, Practice Commentaries, CPLR 302, at 88 (McKinney 1972); *accord, Security National Bank v. Ubex Corp.,* 404 F.Supp. 471, 474 n.7 (D.C.1975).

**5.** Motion for leave to appeal to the Court of Appeals granted, 64 A.D.2d 1036 (1st Dep't Sept. 21, 1978).

**6.** *Fantis* has been criticized as:

"[T]antamount to a holding that an injury occurs in New York whenever the victim of the injury is a New York domiciliary. . . It is well to recall that under the minimum contacts theory of in personam jurisdiction, a defendant is not subject to jurisdiction in

New York unless by his own voluntary act he has purposefully done something here to invoke the benefits and protections of New York law. The mere fact that some consequences of his act are foreseeable in this state is not a sufficient basis for in personam jurisdiction. What is required in each case is 'that there be some act by which the defendant purposefully avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' *Hanson v. Denckla,* 1958, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240 [2 L.Ed.2d 1283]." J. McLaughlin, Practice Commentary, CPLR 302, at 21–22 (McKinney Supp.1978).

**7.** It is clearly within the power of a state court to readjust state law by holding that federal courts have been misguided in their interpretation of state law. See *American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.,* 439 F.2d 428, 431–32 (2d Cir. 1971). But it is equally clear that if such a court is not the highest court in the state, then a federal court must apply what it finds to be the state law "after giving 'proper regard' to relevant rulings of other courts of the State." *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1783, 18 L.Ed.2d 886 (1967); *O'Connor v. Lee-Hy Paving Corp.,* 579 F.2d 194, 205 (2d Cir.), *cert. denied,* —— U.S. ——, 99 S.Ct. 639, 58 L.Ed.2d 696 (1978). It has been held that by enacting CPLR 302(a)(3), "the legislature

fact situations of both cases present more convincing arguments for the exercise of personal jurisdiction than do the facts in the present case. In *Fantis,* the Court relied heavily on the fact that Synergal was an export monopoly and thus was in a unique position to control the competitive relationship between Standard and other importers. The New York court stated: "injury to Standard in New York was foreseeable by Synergal not merely because Standard is incorporated in and has its principal office in New York . . . but because Synergal by virtue of its monopolistic control in its dealings with Standard and its New York competitor Fantis must be deemed to foresee consequences of its actions in New York." *Id.* In *Chemical Bank,* the collateral in question was specific property located in New York, i. e., a New York hockey franchise. Further, the moving defendants even engaged in some discussions in New York although the Court concluded that they did not amount to substantial negotiations leading to the contract in question.

■ In the present case, plaintiff has not alleged any additional facts to support foreseeability other than the mere fact that Sterling is located in New York. Further, there were no negotiations in New York and the collateral in question was never located in New York. Accordingly, the Court determines that CPLR 302(a)(3)(ii) does not provide a basis to assert jurisdiction over Southern Scrap.

### III.

■ The third ground on which Sterling bases jurisdiction is that Southern Scrap transacted business within this state pursuant to CPLR 302(a)(1).[8] The New York Court of Appeals has noted that:

did not intend to extend the jurisdiction of the New York courts to the outer reaches of constitutional power." *American Eutectic, supra,* at 435. Furthermore, while amenability to service is a matter of state law, due process is a matter of federal, as well as state law. *Intermeat, Inc. v. American Poultry, Inc.,* 575 F.2d 1017, 1020 (2d Cir. 1978).

"[W]hile the application of the 'minimal contacts' rule will vary with the quality and the nature of the defendant's activity, 'it is essential in each case that there be some act by which defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *George Reiner & Co. v. Schwartz,* 41 N.Y.2d 648, 650–51, 394 N.Y.S.2d 844, 846, 363 N.E.2d 551, 553 (1977), quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

Furthermore,

"While physical presence is not a prerequisite to constitute transaction of business . . . with few exceptions the Court of Appeals [of New York] has not upheld jurisdiction in its absence, 1 Weinstein-Korn-Miller, *N.Y. Civ. Prac.,* ¶ 302.-08, citing a long list of cases." *Aero-Bocker Knitting Mills v. Allied Fabrics,* 54 A.D.2d 647, 648, 387 N.Y.S.2d 635, 637 (1st Dep't 1976).

The affidavits in support of the motion by Southern Scrap state that the only connection that Southern Scrap has had with New York regarding the events which gave rise to the present suit was an exchange of telephone calls, mail, and telexes with Metric. Here, as in *Friedr. Zoellner (New York) Corp. v. Tex Metals Co.,* 396 F.2d 300, 302 (2d Cir. 1968),

"[defendants] did not maintain an office, warehouse, telephone listing or bank account in New York, did not solicit orders in New York, and did not ship goods into the state. We believe that the New York courts would find [defendants'] connections with New York insufficient to constitute the transaction of business within the state."

---

8. CPLR 302(a)(1) provides:

"As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent: 1. transacts any business within the state."

The fact that Southern Scrap had signed a contract providing for arbitration of disputes in New York is neither significant nor sufficiently purposeful to change the result, since Southern Scrap cannot be said to have availed itself of the privilege of conducting activities within New York.

Further, the Court does not find that Sterling is entitled to conduct discovery for the purpose of uncovering more contacts that Southern Scrap might have with New York. In view of the affidavits submitted by Southern Scrap and the paucity of jurisdictional facts presented by Sterling, the Court sees no reason to find that discovery would be either justified or useful.

*Conclusion*

In sum, the Court hereby grants the motions by Southern Scrap Export and Southern Scrap Material to dismiss for lack of personal jurisdiction and the complaint is hereby dismissed against these two defendants.

SO ORDERED.