**PHILIPP BROTHERS DIVISION OF ENGELHARD MINERALS & CHEMICALS CORPORATION, Plaintiff,**

v.

**EL SALTO, S.A., Defendant.**

**No. 80 Civ. 1570.**

United States District Court, S. D. New York.

April 9, 1980.

Golenbock & Barell, New York City, for plaintiff; Stephen M. Rathkopf, Geri S. Krauss, Gary N. Horowitz, New York City, of counsel.

Melvin D. Kraft, P. C., New York City, for defendant; Melvin D. Kraft, Henry S. Middendorf, Thomas J. Burke, New York City, of counsel.

LASKER, District Judge.

In this suit alleging breach of contract by a Guatamalan corporation, the plaintiff moves to confirm an *ex parte* attachment and for a preliminary injunction. The defendant opposes these motions and moves to dismiss.

In September, October, and November of 1979, Philipp Brothers Division of Engelhard Minerals & Chemical Corporation (Phil-

ipp) entered into five contracts with El Salto, S.A. (El Salto) by which El Salto agreed to sell sugar to Philipp. The agreements were in standard written form.[1] From September 1979 through March 1980, there was extensive correspondence between the parties by telex, letter, telephone calls and personal visits. Throughout this period, El Salto contended (and continues to contend) that in addition to the terms of the written contracts, the parties had orally agreed that Philipp would furnish cash advances of up to $750,000. to El Salto to finance purchases of sugar cane for processing in El Salto's mill. When Philipp did not make such advances, El Salto declared the contracts void by telex of February 19, 1980. Philipp has at all times denied that there was any commitment on its part to make cash advances as a condition of the contract. When El Salto declared the contract at an end, Philipp commenced this suit and moved by *ex parte* order to attach El Salto's assets in this jurisdiction. The motions now pending followed.

The issues raised are:

1. Whether the court has *in personam* jurisdiction, and, if not, *quasi-in-rem* jurisdiction over El Salto?

2. Has Philipp established "that it is probable that [it] will succeed on the merits" within the meaning of CPLR § 6212(a), thereby justifying the continuance of the attachment?

3. Has Philipp shown that it will be irreparably harmed if a preliminary injunction is not granted?

*1. Jurisdiction*

■ Relying on *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Lecopulos*, 553 F.2d 842 (2d Cir. 1977), Philipp contends that this court has personal jurisdiction over El Salto

because each of the five contracts between the parties provides for arbitration in New York of any disputes arising under the contract. In *Merrill Lynch*, the Court of Appeals held that a contract clause requiring that disputes be arbitrated in New York constituted a consent by each party to the jurisdiction of the courts within the state. Quoting its own previous opinion in *Victory Transport Inc. v. Comisaria General*, 336 F.2d 354, 363 (2d Cir. 1964), *cert. denied*, 381 U.S. 934, 85 S.Ct. 1763, 14 L.Ed.2d 698, the court observed that "To hold otherwise would be to render the arbitration clause a nullity." 553 F.2d at 844.

It is true that the plaintiff here has not yet demanded the arbitration to which it is entitled under the contract. Such a failure, however, is at least at the moment not fatal. In *Merrill Lynch* the court rejected the argument that an agreement to arbitrate in New York was not an effective consent to jurisdiction until a demand for arbitration had been made; and remarked:

"That [the plaintiff] chose instead to file suit and move for a stay—evidently to gain the benefit of attachment—is not improper." *Id.* at 845.

Accordingly, we find that the court has jurisdiction of the person of El Salto.[2]

The decision in *Sterling National Bank v. Southern Scrap Export Co.*, 468 F.Supp. 1100 (S.D.N.Y.1979), on which El Salto relies, is not to the contrary. There, among other critical differences, the plaintiff itself was not a party to the arbitration agreement and thus not entitled to the benefits of consent to jurisdiction which it conferred. *Id.* at 1103 n. 2.

*2. Quasi-in-Rem Jurisdiction*

■ El Salto contends that the court does not have *quasi-in-rem* jurisdiction because

---

1. The agreements are typically exemplified by Exhibit 1 to the affidavit of George Thomas in support of plaintiff's motion.

2. In its reply memorandum, Philipp concedes that the court might lose jurisdiction of El Salto's person if Philipp were to waive its right to arbitrate the dispute. The ruling above that the court presently has jurisdiction of El Salto is, of course, without prejudice to a new motion

by El Salto to dismiss if at any time Philipp should waive the right to arbitrate or refuse to arbitrate. Without expressing any final view of the matter it is also arguable that jurisdiction found to exist in a *Merrill Lynch* type case may evaporate if the plaintiff who has secured jurisdiction against the defendant because of the terms of an arbitration clause unduly delays initiating the arbitration process.

El Salto's contacts with New York are not sufficient to satisfy the "minimum contacts" standard of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), as required as a matter of due process under the Supreme Court's decision in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). *See also Rush v. Savchuk*, —— U.S. ——, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980). In view of our determination that *in personam* jurisdiction exists, it is unnecessary to decide whether the court also has *quasi-in-rem* jurisdiction over El Salto. However, we are substantially impressed by Philipp's argument that El Salto's contacts with New York do satisfy the minimum contacts test, especially in light of the Second Circuit's decision in *Intermeat Inc. v. American Poultry Inc.*, 575 F.2d 1017 (2d Cir. 1978). The facts here establish that 1) the five contracts in question were mailed by Philipp from New York to El Salto, signed by El Salto and returned to Philipp in New York; 2) in the year preceding this lawsuit, El Salto transacted more than $5,000,000. of business with New York sugar buyers, including the plaintiff and four or five other customers; 3) the contracts in question call for payment by letters of credit drawn on New York banks; 4) all of El Salto's contracts, both with Philipp and its other customers in New York, contain a clause calling for arbitration of any disputes in New York. In the circumstances, the words of *Intermeat* are applicable:

> "Where a corporation located in another state is continuously involved in the commerce of New York and has repeatedly consented to arbitration in New York, we see nothing unfair or unreasonable in requiring it to defend in New York an action arising out of such commerce." 575 F.2d at 1023.

### 3. Probability or Likelihood of Success

To prevail on its motion to confirm the *ex parte* attachment, Philipp must demonstrate that it will probably succeed on the merits, CPLR § 6212(a), and similarly, to prevail on its motion for a preliminary injunction, it must demonstrate that it is like-

ly to succeed on the merits, *Jack Kahn Music Co. v. Baldwin Piano & Organ Co.*, 604 F.2d 755, 758 (2d Cir. 1979). El Salto claims that Philipp has not established probability or likelihood of success on the merits because, in El Salto's view, the contracts called for advance payments which were not made by Philipp. This argument suffers two defects. First, it begs the question whether such payments were in fact contracted for; second, it assumes that evidence respecting the alleged oral agreement for advance payments would be admissible to vary the terms of the written contracts. On the latter point, we believe that El Salto's position founders. The New York parol evidence rule provides:

> "Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement . . ." New York U.C.C. § 2–202.

El Salto contends that the rule is inapplicable here because, according to it, the parties did not intend the written contract to be a "final expression of their agreement." The difficulty with this argument is that at least in the first instance the question of whether the parties intended the written instrument to be their final agreement is not to be judged on the basis of evidence as to the subjective attitude of the parties but by measuring the completeness of the written instrument itself.

■ The only item of contract incompleteness which El Salto points out is that the written agreements do not specify the dates by which the buyer must furnish a letter of credit. However, even assuming that such a deficiency might render the contract incomplete within the meaning of the statute (a proposition which is not at all clear), El Salto would not be free to put evidence before the court which contradicts the specific and unambiguous contractual

language relating to payment. That language makes no provision for advance payments.[3] We thus conclude that the law of New York forbids the admissibility of oral evidence to prove the alleged requirement for cash advances in the case at hand. Admissibility of such evidence would altogether vary the complete and clear terms of the contract. This is not to say that if, as implied in El Salto's memorandum of law, its answer will assert that it was fraudulently induced by such oral promises to enter into the written agreements, evidence of the oral promises would not be admissible in support of that proposition. But for the purposes at hand it is not admissible.

■ El Salto contends that Philipp has not established that it was ready, willing and able to perform the agreement or that El Salto breached the agreement. We disagree, and find that Philipp has sufficiently demonstrated its intention, willingness and ability to purchase the sugar it contracted for and that El Salto terminated the agreement for reasons not authorized by the written contract.

### 4. Irreparable Harm

■ El Salto argues that in any event no injunction should be granted because Philipp cannot demonstrate irreparable harm, since El Salto is good for any judgment for money damages that Philipp might obtain. The argument is good in theory but it does not carry the day. While El Salto has submitted evidence which purports to show that it has a net worth in excess of $10,000,000., several factors suggest that Philipp

might encounter difficulty collecting a money judgment. First, El Salto is located in a relatively distant foreign country with admitted current political instability. Second, El Salto's mills are presently shut down because of a shortage of sugar cane caused by political unrest and labor disputes. Third, a large part of El Salto's net worth is found in its fixed rather than liquid assets. Fourth, as indicated in the audit of El Salto's financial condition prepared by its own outside accountants, it suffered cumulative losses of $4,593,025. through October 31, 1979, including losses of $2,154,148. between October 31, 1978 and October 31, 1979. In the circumstances, we conclude that Philipp has demonstrated the need for preliminary injunctive relief to protect it from irreparable harm.

For the reasons stated above, the plaintiff's motion for confirmation of the attachments and for injunctive relief is granted.[4] The defendant's motion to dismiss is denied.

It is so ordered.

---

**3.** For instance, the parties' first contract dated September 27, 1979 (which appears to be identical with all the others) provides:

"Buyer shall open an irrevocable Letter of Credit in favor of Seller with a prime New York bank. The credit shall provide for payment of 98% (ninety eight percent) value of the material basis 96 degrees polarization and Bill of Lading weights, against presentation of shipping documents consisting of:
—Full set, Clean on Board Ocean Bills of Lading made out to order and blank endorsed;
—Commercial Invoice in quadruplicate;
—Certificate of Origin;
—Certificate indicating polarization minimum 96 degrees at time of shipment; and

—Any other obtainable documents which may be required by receivers at destination, provided Buyer notifies Seller in reasonable time of the additional documents required."

**4.** In view of our decision to confirm the attachments and issue a preliminary injunction, we agree with El Salto that the adequacy of the security posted by Philipp should be reviewed. However, Philipp is entitled to an opportunity to submit its views on the question. Accordingly, it is directed to furnish a letter or affidavit relating to the matter no later than 3:00 P.M., Friday, April 11, 1980.