The **CHUNKY CORPORATION**, Plaintiff,

v.

**BLUMENTHAL BROS. CHOCOLATE CO.**, Defendant and Third-Party Plaintiff,

v.

**H. C. CHRISTIANS CO.** and **Grover Farms, Inc.**, Third-Party Defendants.

No. 67 Civ. 1365.

United States District Court
S. D. New York.
March 28, 1969.

Costello, Ward, Tirabasso & Shea, New York City, for defendant and third-party plaintiff Blumenthal Bros. Chocolate Co., Mortimer C. Shea, New York City, of counsel.

Cahill, Gordon, Sonnett, Reindel & Ohl, New York City, for third-party defendant H. C. Christians Co., Thomas F. Curnin and Roger S. Fine, New York City, of counsel.

Finley, Kumble, Underberg, Persky & Roth, New York City, for third-party defendant Grover Farms, Inc., Herbert F. Roth, New York City, of counsel.

MANSFIELD, District Judge.

This is a motion to dismiss a third-party complaint filed with the leave of the Court in this diversity suit for damages allegedly resulting from a shipment of chocolate by defendant Blumenthal Bros. Chocolate Company ("Blumenthal") from its plant in Philadelphia, Pennsylvania, to plaintiff, The Chunky Corporation's ("Chunky") candy factory in Brooklyn, New York. Chunky claims that as a result of an alleged impurity in the chocolate in the form of bacteria known as salmonellae, it was compelled to destroy a large amount of candy manufactured by it from the chocolate, it suffered substantial impairment of good will, and it will be compelled to undertake the defense of lawsuits by purchasers of its candy and may have to pay judgments in those suits. Chunky charges Blumenthal with breaches of express and implied warranty and negligence.

Blumenthal has denied the material allegations of the complaint and by way of its third-party complaint, asserts that if it is held liable on Chunky's claim the third-party defendants, H. C. Christians Company ("Christians") and Grover Farms, Inc. ("Grover") should be jointly and severally held liable over to it. Christians, a wholesaler, is a Wisconsin corporation with its principal

place of business in Chicago, Illinois, where it was served with process; Grover is a Maryland corporation engaged in the dairy business, with its headquarters in Baltimore, where it was served. As wholesaler Christians entered into a contract with Blumenthal under which Christians agreed to supply Blumenthal with non-fat dry milk for use in the production of chocolate. The milk was produced by Grover, and delivery was made by Grover from its dairy in Pennsylvania to the Blumenthal plant, apparently pursuant to a contract between Grover and Christians. Christians did not participate in the actual production or delivery of the milk.

Blumenthal's third-party claim is that if there were salmonellae in the chocolate it delivered to Chunky, the bacteria were introduced into Blumenthal's plant through the milk delivered by Grover pursuant to Christians' contract with Blumenthal.

Both third-party defendants move to dismiss the third-party complaint on the ground that the Court lacks personal jurisdiction over them, or, in the alternative, that the third-party complaint fails to state a claim on which relief can be granted. We conclude that the third-party complaint must be dismissed for the reason that personal jurisdiction over the third parties is lacking.

### Christians

■■ This being a diversity suit, the existence of personal jurisdiction over these parties is governed by New York law. Liquid Carriers Corp. v. American Marine Corp., 375 F.2d 951 (2d Cir. 1967). Blumenthal first contends that personal jurisdiction over Christians exists under New York CPLR § 301, asserting that Christians' activities constitute doing business within the State of New York. An affidavit submitted by Christians' treasurer indicates that it does have New York customers, and that in the fiscal year ending January 31, 1967 almost 4% of its sales were to these customers for use or consumption in New York. This affidavit, which is uncontroverted by Blumenthal, also states that Christians has no physical facilities, telephone listings, mailing addresses, or bank accounts in New York. It has no employees who reside in New York. Thus its activities amount to less contact with the state than was shown in those cases that have taken the most expansive view of the concept of doing business for the purpose of establishing personal jurisdiction under CPLR § 301. Bryant v. Finnish National Airlines, 15 N.Y.2d 426, 260 N.Y.S.2d 625, 208 N.E. 2d 439 (1965) (maintenance of office with seven employees in New York); Frummer v. Hilton Hotels Int'l, 19 N.Y. 2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851 (1967), cert. denied, 389 U.S. 923, 88 S. Ct. 241, 19 L.Ed.2d 266 (1968) (maintenance of permanent office by affiliated agent which accepted and confirmed reservations). In both Frummer and Bryant the foreign corporate defendants were represented on a permanent and continuous basis by personnel actively engaged in the solicitation of business for defendants from permanently maintained offices. No such continuous activity on the part of Christians in this state has been shown, and, therefore, there can be no basis for the exercise of this Court's personal jurisdiction pursuant to CPLR § 301.

Blumenthal next urges that personal jurisdiction exists by virtue of the "single act" long arm statute, New York CPLR § 302. Since the third-party cause of action clearly did not arise from the transaction of any business by Christians in this state [§ 302(a) (1)], or from a tortious act committed by Christians within the state [§ 302(a) (2)], the only arguable basis for personal jurisdiction is § 302(a) (3), which provides in pertinent part:

> "(a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent * * *.

\* \* \* \* \* \*

"3. commits a tortious act without the state causing injury to person or property within the state, \* \* if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce \* \* \*."

■ The threshold question under this subsection is whether Christians "in person or through an agent" is alleged to have committed a tortious act without the state causing injury to a person or property within the state. Both Christians and Grover argue that whatever tortious act is alleged, there is in the third-party complaint no allegation of injury to a person or property within New York State. The injury to Blumenthal, it is submitted, is a financial loss which accrues in Blumenthal's home state of Pennsylvania. This contention must be rejected. The primary action alleges injury to persons and property within New York State, and it is this injury which forms the actual basis of the third-party complaint. It is conceptualistic at best to state that a Pennsylvania corporation paying a judgment resulting from liability which accrued in New York is "injured" only in Pennsylvania. The only authority cited by third-party defendants for this proposition is Spectacular Promotions Inc. v. Radio Station WING, 272 F.Supp. 734 (S.D. N.Y.1967), which actually comes closer to supporting Blumenthal's position. That case merely held that a New York corporation which alleged unfair competition with respect to a sports event it was promoting in Ohio was injured in Ohio and not in New York. This line of reasoning lends support to the conclusion that here the injury to Blumenthal, if any, arose in New York and not in Pennsylvania.

■ Christians, however, further asserts that the third-party complaint cannot be read as alleging any tortious act on its part at all. Christians was not involved in any manner in the physical processing and delivery of the milk; its role in the transaction appears to be that of an independent middleman or wholesaler. It contracted with Blumenthal to supply milk. However, it was not the producer or handler of the milk. As a wholesaler it entered into a second contract with Grover pursuant to which the milk, which was produced by Grover, was delivered by it to Blumenthal. Plaintiff, who has the burden of establishing that a basis for the exercise of personal jurisdiction exists, Kelly v. Three Bays Corp., 173 F.Supp. 835 (S.D. N.Y.1959), affd., 276 F.2d 958 (2d Cir. 1960), has brought forward nothing in the record or pleadings to indicate that the relationship between Grover and Christians was such that Christians would be liable in tort for negligence on the part of Grover in the preparation of the milk. Although plaintiff in its papers makes some passing reference to Grover's and Christians' working together in this lawsuit, there is no allegation in the third-party complaint or any evidence that there is an interlocking corporate relationship between the firms, who are represented by separate counsel, or that there was an employer-employee relationship upon which vicarious liability could be based. Christians did not act as Grover's agent, and there is no evidence that Christians assumed any duties with respect to the manufacture of the milk. Thus, even though Christians may be charged with breach of contract, its alleged breach did not amount to a tort.

■ Assuming *arguendo* that there was some basis for finding that Christians had in person or through an agent committed a tortious act, it would still

be necessary to establish that one of the qualifications of subsections (i) or (ii) of § 302(a) (3) is met with respect to Christians. The first question raised is whether or not a firm with no permanent employees in New York and no other establishment in the state can, by virtue of the fact that about 4% of its revenue is derived from New York sources, be said to do or solicit business on a regular basis, engage in any other persistent course of conduct, or derive substantial revenue from goods used or consumed in New York. The standard, of course, is a less stringent one than that applied to determine what constitutes doing business under § 301, or else there would be no point in including it in § 302. The New York statute has received little construction thus far as to the standard to be applied. The practice commentary with respect to § 302 suggests that if a firm derived 10% of its revenue from New York it would be subject to personal jurisdiction under this subsection. 7B McKinney's Consol.Laws of New York Ann. 1968–1969, Pocket Part at 111. Absent any clear authoritative guidance, we are forced to anticipate how New York's highest court would construe the statute. Since each case must be decided on its own facts, it is difficult to establish in percentage terms the lower limit of this standard. However, we are persuaded that more contact with New York than has been shown here would be necessary to meet the requirements of § 302(a) (3) (i), particularly in the absence of any showing as to the nature of Christians' sales to customers in New York and whether they were similar to the type of business giving rise to the third-party suit here.

There remains the question of whether, even though Christians has not engaged in a course of conduct in New York sufficiently continuous and substantial to invoke subsection (i), it falls within subsection (ii), which requires that the defendant "expects or should reasonably expect the act to have consequences in" New York.[1]

There is support for Blumenthal's argument that the New York Legislature's 1966 amendment of § 302 (a) was intended to overrule Feathers v. McLucas, 15 N.Y.2d 443, 261 N.Y.S. 2d 8, 209 N.E.2d 68 (1965), which held that a Kansas corporation's shipment to Missouri of a pressure tank which later exploded in New York did not constitute a tortious act in New York. However, we believe that the statute, even as so amended, should be construed to require a greater degree of reasonable foreseeability than that found here, where Christians was unaware that chocolate manufactured by Blumenthal in Pennsylvania (from the dried milk supplied to it there) might be shipped to New York. In the absence of such a requirement, the statutory test would rapidly be watered down to one of hindsight, by which the out-of-state defendant would be presumed to have reasonably foreseen the New York consequences of his conduct unless he could offer convincing proof to the contrary. Furthermore, such a loose standard would in our view violate Christians' due process rights under the constitution.

The test for determining whether Christians can constitutionally be made subject to the personal jurisdiction of New York in this context, as expressed by the Supreme Court in a leading case, Internat'l Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), is whether there exist "sufficient contacts or ties with the state of the forum to make it reasonable and just, according to our tra-

1. We pass over the question of whether Christians "derives substantial revenue from interstate * * * commerce", § 302(a) (3) (ii). Although Blumenthal has not adduced proof that Christians derives substantial revenue from interstate commerce, it may be inferred that a Wisconsin corporation with headquarters in Chicago, which derives 4% of its revenue from New York State and which contracted in this case to supply milk in Pennsylvania, is engaged in a substantial amount of interstate business.

ditional concept of fair play and substantial justice" to permit such jurisdiction to be established. 326 U.S. at 320, 66 S.Ct. at 160. It was further stated in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), that "it is essential in each case that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." 357 U.S. at 253, 78 S.Ct. at 1239. Although the Illinois court in Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961), found that this standard was fulfilled by the introduction of defective goods into commerce even though the defendant had no contact with Illinois, we believe that something more must be shown in order to meet the requirements of due process in the exercise of jurisdiction over foreign corporations. It might be argued that the New York State Legislature has provided something more by requiring that defendant do substantial interstate business, apparently on the theory that a firm that is actively engaged in interstate commerce invokes the benefit of the laws of many jurisdictions and should be, therefore, subject to suit wherever it should reasonably foresee that its goods may eventually be delivered. While this rationale raises a close question, the standards set forth by the Supreme Court contemplate a more substantial contact with the forum state itself as opposed to a general engagement in interstate commerce. It would be different, of course, if Christians were being sued on an obligation arising from its activities in New York, as was the case in *Internat'l Shoe*. On the facts before us, however, due process requires a more substantial course of conduct within New York to justify the exercise of *in personam* jurisdiction.

### Grover

Blumenthal does not contend that Grover is amenable to suit under CPLR § 301. On the other hand, it is clear that Grover is accused in the third-party complaint of committing a tortious act which, under the foregoing analysis, had consequences in New York State. It is not contended that Grover would fall within the requirements of § 302(a) (3) (i); the sole question, therefore, is whether subsection (ii) is applicable to Grover, and, if so, whether its application in this context would comport with the requirements of due process.

■ Plaintiff has not, however, adduced any proof that Grover engages in substantial interstate commerce, an essential requirement for invocation of § 302(a) (3) (ii). The delivery of milk in this instance was from a dairy located in Pennsylvania to Blumenthal's plant in Philadelphia. Although it is true that Grover's corporate headquarters are in Baltimore, Maryland, this cannot of itself furnish a basis for an inference that its business is substantially interstate in nature. It may be that Grover has other dairies located in Pennsylvania, Maryland, or other states. However, it may also be true that all orders are filled, as this one was, on an intrastate basis. This Court is not free to speculate as to the degree to which Grover's deliveries cross state lines when the only delivery before the Court is intrastate and no other proof is offered except that the order may have emanated from a Baltimore office. What § 302(a) (3) (ii) requires is that the foreign corporate defendant regularly engage in the introduction of goods into interstate commerce; in the absence of any such proof the third-party plaintiff, which assumes the burden of establishing the basis for in personam jurisdiction, Kelly v. Three Bays Corp., *supra*, has failed to show that the subsection is applicable.

■ In any event, even if this subsection were construed to include Grover in its context, we would conclude, for the reasons already stated, that its application would constitute a denial of due process in contravention of Grover's Fourteenth Amendment rights. All of the reasoning on the constitutional issue with respect to Christians is applicable to

Grover; furthermore, since Grover does not even have the small amount of contact with New York that Christians has, the same result would follow *a fortiori.* If Grover could be brought into this action, then any supplier of raw material to a manufacturer which engages in interstate commerce could be compelled to defend an action in foreign jurisdictions with which the supplier has never had any contact. Such a result does not follow from the holdings or reasoning of the Supreme Court in *Internat'l Shoe* and *Hanson,* and would exceed the bounds of "fair play and substantial justice."

No reason in policy favors joining the third-party defendants here. The issues in the third-party action may well turn out to be substantially different from those in the primary action. In the primary action the central questions will be whether there was an impurity in the chocolate delivered by Blumenthal to Chunky, the nature of the warranties made by Blumenthal to Chunky, whether Blumenthal was in any manner negligent, and the extent of the damage to Chunky. In the third-party action, although the same impurity will be in issue, the focus of inquiry will be upon the milk delivered by Grover to Blumenthal, the warranties made by third-party defendants to Blumenthal, and Grover's methods of processing. It is by no means clear that trial of the primary and third-party actions in one proceeding would be economical or significantly more expedient. Furthermore, if Blumenthal were to prevail in the primary action, the taking of proof on the collateral issues in the third-party action in the same proceeding would in fact be wasteful. Under these circumstances there is no reason to strain the constitutional and statutory limitations upon the exercise of personal jurisdiction to their breaking point.

For the foregoing reasons, the motions of third-party defendants to dismiss the third-party complaint for lack of personal jurisdiction are granted, and it becomes unnecessary to pass upon the issues raised by their motions to dismiss for failure to state a claim upon which relief can be granted.

It is so ordered.