SYBRON CORPORATION, Respondent, v ALFRED J. WETZEL et al., Appellants.

Fourth Department, April 7, 1978

## APPEARANCES OF COUNSEL

*Coudert Brothers (Harris, Beach, Wilcox, Rubin & Levey,* by *John W. Clark* of counsel), for appellants.

*Nixon, Hargrave, Devans & Doyle (Edward J. Burns* and *Jonathan H. Winer* of counsel), for respondent.

## OPINION OF THE COURT

DENMAN, J.

Defendant Wetzel was employed for many years by Pfaudler, a subsidiary of plaintiff Sybron, which is engaged in the design, manufacture and sale of glass-lined chemical processing equipment. Defendant De Dietrich (USA) is an American subsidiary of De Dietrich & Cie, a French corporation also engaged in the manufacture of glass-lined chemical processing equipment. During the course of his employment with Pfaudler, Wetzel generally supervised the preparation, coating and firing of the glass used to line these metal vessels. He retired from Pfaudler in 1974 and moved to Florida. The former chief

ceramist for Pfaudler, now employed by De Dietrich (USA), contacted Wetzel in Florida with an offer of employment to perform essentially the same type of work for defendant corporation as he had performed for many years for Pfaudler. Plaintiff instituted an action seeking to enjoin Wetzel from employment with De Dietrich, relying on a patent and trade secret agreement executed by Wetzel in 1961. It also seeks to enjoin De Dietrich from employing Wetzel and from soliciting any trade secrets from him. Plaintiff's motion for a preliminary injunction restraining Wetzel from disclosing trade secrets to and being employed by De Dietrich (USA) and restraining De Dietrich from employing or soliciting trade secrets from Wetzel was granted and defendants' cross motion to dismiss for lack of jurisdiction was denied. Defendants appeal from that determination.

■ Trial Term properly found that there was a basis for personal jurisdiction over Wetzel under CPLR 302 (subd [a], par 1). The cause of action here asserted arises out of a contract executed in New York by defendant Wetzel while present in this State. He continued in the employ of plaintiff in New York for 13 years after executing the contract, acquiring the skills and knowledge central to the merits of this litigation. Following his retirement, Wetzel continued to receive pension checks from plaintiff at a New York address and continued to engage in special assignments on behalf of plaintiff. Examination of the relationship among the defendants, the forum and the litigation makes clear that his actions "certainly are of the nature and quality to be deemed sufficient to render him liable to suit here." *(Reiner & Co. v Schwartz,* 41 NY2d 648, 653; see, also, *Singer v Walker,* 15 NY2d 443; *GTP Leisure Prods. v B-W Footwear Co.,* 55 AD2d 1009; *ABCKO Ind. v Lennon,* 85 Misc 2d 465, affd 52 AD2d 435.)

■ Service upon defendant Wetzel was also properly made. He had given up his Florida residence and, although he had leased an apartment in Union, New Jersey, had not as yet established residence there. He was in Rochester on a visit at his son's home, the address which he had designated for receipt of his pension checks. The process server went to that address and was told by defendant's son that his father was away for a few days but would return. The process server left the summons with the son and mailed a copy to defendant's former address in Florida. Additionally, an order to show

cause issued the following day incorporated a direction that all of the papers and another copy of the summons be served on defendant's son at the same address that day. It is not contested that defendant was made aware of service in both instances and that he was on proper notice. "The crucial question for the court in each case should be whether the purpose of the statute—to give fair notice—is satisfied by the service in issue." (1 Weinstein-Korn-Miller, NY Civ Prac, par 308.13.)

It is difficult to see in what different way service could have been effected. Defendant had given up his Florida residence, had not as yet established residence in New Jersey and was not at the address in New York which he used for business purposes. To find that service was not proper under the facts here would mean that Wetzel was not amenable to process, a result which is patently untenable. We therefore find that service was proper under either CPLR 308 (subd 2) or CPLR 308 (subd 5) pursuant to court order.

■ Trial Term correctly determined that jurisdiction over De Dietrich cannot be founded on CPLR 301 as it cannot be construed as "doing business" in New York State. It does not have the kind of substantial and continuous business activities within the State which would justify a finding that it is "doing business" here (see *Carbone v Fort Erie Jockey Club,* 47 AD2d 337; *Meunier v Stebo, Inc.,* 38 AD2d 590).

Nor do we believe that jurisdiction can be based on CPLR 302 (subd [a], par 3) which provides for personal jurisdiction over a nondomiciliary who "commits a tortious act without the state causing injury to person or property within the state * * * if he * * * expects or should reasonably expect the act to have consequence in the state and derives substantial revenue from interstate or international commerce". The legislative history of that section indicates that it was enacted to fill the gap caused by the decision in *Feathers v McLucas* (15 NY2d 443) in which the court held that there was no jurisdiction over a Kansas manufacturer of a propane gas tank which exploded in New York causing property damage and personal injury. The section then was enacted to provide for such an act (the manufacture of the tank) occurring without the State and contemplated a personal injury occurring in New York. (See 1976 McKinney's Session Laws of NY, Judicial Conference Report on the Civil Practice Law and Rules, pp 2780, 2787-2788; *id.,* Memorandum of the Judicial

Conference, p 2911.) The alleged tortious act here, malicious interference with contract rights, is both speculative and anticipatory. The only act performed by defendant De Dietrich thus far is to employ Wetzel. The agreement executed by Wetzel with the plaintiff in 1961 does not prohibit his employment by a competitor, but merely the divulging of trade secrets. There is nothing to prevent him from employment with defendant corporation and that is the only act which has taken place. Therefore the first requirement of the statute has not been fulfilled, namely, there has been no tortious conduct. Additionally, possible consequences which might occur in the State of New York are tenuous at best. "Section 302 (a)(3) is not satisfied by remote or consequential injuries which occur in New York only because the plaintiff is domiciled, incorporated or doing business in the state. See Black v. Oberle Rentals, Inc., 55 Misc. 2d 398, 285 N.Y.S.2d 226". *(Friedr. Zoellner [New York] Corp. v Tex Metals Co.,* 396 F2d 300, 303; see, also, *American Eutectic Welding Alloys Sales Co. v Dytron Alloys Corp.,* 439 F2d 428; *Chemical Bank v World Hockey Assn.,* 403 F Supp 1374; *General Motors Acceptance Corp. v Richardson,* 59 Misc 2d 744.)

It would stretch the bounds of the statute beyond justifiable limits to find that defendant, a Delaware corporation based in New Jersey, hired defendant, a resident of Florida, and that in so doing it could have reasonably foreseen that its actions would have consequences in New York State which would subject it to litigation. De Dietrich's motion to dismiss the complaint for lack of jurisdiction should therefore have been granted.

Plaintiff was granted a preliminary injunction restraining defendant Wetzel from employment by De Dietrich and from divulging any of plaintiff's trade secrets to De Dietrich. By order entered January 13, 1978, we modified that order to the extent that it enjoined Wetzel from employment. The remaining question is whether plaintiff is entitled to preliminary injunctive relief preventing Wetzel from divulging trade secrets.

The patent and trade secret agreement which Wetzel signed in 1961 provides, in pertinent part, as follows: "I will preserve in confidence, and in accordance with established Company policy, all secret and confidential matters of the Company and others with whom the Company may have confidential relations both during my employment and thereafter." This agree-

ment clearly is not a restriction on employment by a competitor but merely prohibits Wetzel from divulging any of plaintiff's trade secrets. The issue before us is therefore whether the skills, knowledge and experience acquired by Wetzel while in the employ of Pfaudler are, by their very nature, trade secrets.

Wetzel was not a chemist or an engineer but a high school graduate who had taken courses in blueprint reading and industrial management. He worked his way up through the ranks from a helper to general foreman, acquiring during his 34 years of employment a high degree of skill and experience in supervising the process of lining metal vessels with liquid glass. He had nothing to do with the development of the processes by which the glass was prepared and was not involved in the preparation. That was the responsibility of the chief ceramist. Wetzel testified without contradiction that he had no knowledge of any formulae and that he was not consulted with respect to the composition or preparation of the glass. His job was merely to observe in order to make sure that the metal was ready to be coated, and that the glass was the proper consistency. If he detected flaws, he did nothing to correct them but notified his superiors. The various procedures which he supervised were established by persons other than himself and he merely carried them out. It seems clear that his value to Pfaudler and potentially to De Dietrich is that he has acquired a high degree of skill and a good deal of experience in supervising the processes necessary for lining metal vessels with glass.

"The significant difference of fact between trade secrets and processes or devices which are not secret is that knowledge of the latter is available to the copier without the use of improper means to procure it, while knowledge of the former is ordinarily available to him only by the use of such means. It is the employment of improper means to procure the trade secret, rather than the mere copying or use, which is the basis of the liability under the rule stated in this Section." (Restatement, Torts, § 757, Comment *a* as quoted in *Minnesota Min. & Mfg. Co. v Technical Tape Corp.,* 23 Misc 2d 671, 679, affd 15 AD2d 960.)

In all of the cases relied on by plaintiff, the employees improperly and/or illegally appropriated information, plans or specifications from employers, while still in their employ, for the purpose of diverting such information to their own benefit

or to that of a successor employer. It is the impropriety and deliberate breach of the confidential relationship which is the controlling factor in those cases. (See, e.g., *Emery Co. v Marcan Prods. Corp.,* 268 F Supp 289, affd 389 F2d 11, cert den 393 US 835; *Minnesota Min. & Mfg. Co. v Technical Tape Corp., supra; Vulcan Detinning Co. v Assmann,* 185 App Div 399; *General Aniline & Film Corp. v Frantz,* 50 Misc 2d 994, mod 52 Misc 2d 197.)

In contrast, the information Wetzel took from Pfaudler was nothing in which Pfaudler had a proprietary interest but was rather the accumulation of the knowledge, skill and experience which Wetzel has gained by engaging in a highly skilled employment for a number of years. "All that clearly appears is that he undertook to use in his new employment the knowledge he had acquired in the old. This, if it involves no breach of confidence, is not unlawful, for equity has no power to compel a man who changes employers to wipe clean the slate of his memory." *(Vulcan Detinning Co. v Assmann, supra,* p 424, quoting *Peerless Pattern Co. v Pictorial Review Co.,* 147 App Div 715, 717.) Plaintiff seeks to restrain Wetzel from working for any competitor, but there is no basis for such restriction. A negative covenant may be invoked only to protect trade secrets and is unavailing to stifle competition. *(Kaumagraph Co. v Stampagraph Co.,* 235 NY 1; *Lloyds Employment Corp. v Kraft,* 276 App Div 1036, mot for lv to app den 277 App Div 800; *Peerless Pattern Co. v Pictorial Review Co., supra.)*

■ We find therefore that the skill and experience acquired by Wetzel do not constitute trade secrets and that he cannot be enjoined from employment by De Dietrich (USA).

Therefore the order should be reversed and the complaint dismissed as to both defendants.

CARDAMONE, J. P., DILLON and HANCOCK, JR., JJ., concur.

Order unanimously reversed on the law and facts, without costs, and complaint dismissed.