**TRAFALGAR CAPITAL CORPORATION,**
Plaintiff,

v.

**OIL PRODUCERS EQUIPMENT CORP., Charles C. Williams, Jr., Rex G. Wallace and Tennessee Capital Corporation,** Defendants.

No. 82 Civ. 4809.

United States District Court, S.D. New York.

Jan. 19, 1983.

Gusrae, Kaplan, Lowy & Bruno, New York City, for plaintiff; Martin Kaplan, New York City, of counsel.

Kronish, Lieb, Shainswit, Weiner & Hellman, New York City, Johnson & Lee, Memphis, Tenn., for defendants; Alan Levine, Barry P. Levenfeld, New York City, William Michael Roberts, Memphis, Tenn., of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff, Trafalgar Capital Corporation ("Trafalgar"), brings this diversity action against Oil Producers Equipment Corporation ("Oil Producers"); Rex G. Wallace and Charles C. Williams, Jr., respectively, President and Vice President of Oil Producers, in their individual capacities; and Tennessee Capital Corporation ("Tennessee Capital"). Trafalgar is a New York financial consulting service. Oil Producers, a manufacturer of oil well drilling and mining equipment, is a Texas corporation with its principal place of business in Longview, Texas. Wallace and Williams live and work in Longview. Tennessee Capital is a regional brokerage and investment banking firm organized under the laws of the State of Tennessee with its principal place of business in Memphis.

The complaint contains four counts. The first alleges a breach by Oil Producers of a financial consulting contract between it and plaintiff ("the contract"). The second charges Wallace and Williams with tortious interference with the contract. Count three raises a claim of fraud against Oil Producers, Wallace and Williams with respect to the contract. Finally, count four alleges that Tennessee Capital induced the other defendants to breach the contract and instead, to enter into an underwriting agreement with it. Plaintiff seeks recovery of $15,000, and 10% of Oil Producers' outstanding common stock as provided for under the contract. Each defendant moves, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure to dismiss the complaint for lack of personal jurisdiction, or in

the alternative, to transfer this action to the United States District Court for the Eastern District of Texas under 28 U.S.C., section 1404(a).

Oil Producers and Trafalgar first had contact with one another in the summer of 1980, when Curtis Payne, who allegedly represented that he was an agent of Trafalgar, approached Williams. Payne stated that Trafalgar could provide financial consulting services to Oil Producers with respect to equity funding through a public offering of common stock. Over a three month period numerous discussions ensued among Wallace, Williams and Payne, all of which occurred in Texas. These discussions also included telephone conversations from Texas with Trafalgar representatives in New York relating to a contemplated agreement between Trafalgar and Oil Producers.

On November 6, 1980, Williams and Wallace, accompanied by Payne, travelled to New York and met with Neal Bruckman, Trafalgar's president, and another Trafalgar employee to conclude an agreement based on their prior negotiations. There is a dispute as to how long the meetings lasted. Defendants claim the meetings lasted less than an hour; plaintiff claims the parties met for two hours in Trafalgar's offices, and for four hours in a New York restaurant. Both agree that after the meetings adjourned, Wallace and Williams returned to their hotel in Newark, New Jersey, where they and Payne were staying preparatory to their return to Texas. Whatever the fact as to how long the discussions lasted, the parties negotiated not only the terms of a financial consulting contract to be entered into between Trafalgar and Oil Producers, but also discussed the terms of a public offering of Oil Producers securities with respect to which Trafalgar was to act as Oil Producers' consultant. A draft letter agreement for Trafalgar's services, based upon the New York discussions, was brought to Wallace and Williams at their hotel in Newark. After

"minor handwritten modifications,"[1] the contract was executed, and Williams and Wallace returned to Texas the next morning.

Thereafter, Trafalgar drafted proposed underwriting documents of the public offering in New York. Upon completion, copies were mailed to Oil Producers' accountant and counsel in Texas, who after review returned them to Trafalgar with suggested changes. This procedure was repeated several times, as further drafts were revised and reviewed. In February, 1981, once the underwriting documents were acceptable, Wallace and Williams returned to New York to discuss the contemplated public offering with potential underwriters. Discussions ensued, but none bore fruit. Thereafter, Williams and Wallace made no other trips to New York in connection with this matter.

Trafalgar also contacted non-New York underwriters, one of which was Tennessee Capital. Indeed, upon leaving New York after their second visit, Wallace, Williams and Bruckman travelled to Memphis to discuss matters with Tennessee Capital representatives. The result of the meeting is disputed. Plaintiff claims that Tennessee Capital agreed to underwrite the offering; Tennessee Capital states that no agreement was reached, and that it then had no interest in raising capital for Oil Producers in accordance with the plans suggested by Trafalgar.

In March, 1981, Oil Producers terminated its agreement with Trafalgar. Thereafter, following negotiations in Texas and Tennessee between Oil Producers and Tennessee Capital, they entered into an agreement. A public offering of Oil Producers' common stock, underwritten by Tennessee Capital, was made in January, 1982.

All defendants assert that they are non-residents, have never transacted business in New York and have no representative, office or property in New York; that the agreement sued upon was negotiated primarily in Texas and was executed on behalf of Oil Producers in Newark, New Jersey. The individual defendants, in addition, claim that their attendance in New York, when the contract with the plaintiff was further negotiated and its terms finalized, was solely as officers of Oil Producers.

## THE MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

■ "The amenability of a foreign [party] to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits."[2] Thus, New York's long arm statute[3] is determinative of the jurisdictional claims here at issue, the resolution of which requires the court to examine the "totality of the defendants activities within the forum,"[4] and consider whether the defendants have "engaged in some purposeful activity in [the] State in connection with the matter in suit."[5] Furthermore, the burden of establishing jurisdiction rests upon the party asserting it.[6] With these benchmarks in mind, the Court turns to the issues in this case.

### (a) Oil Producers

■ Plaintiff contends that Oil Producers has sufficient contacts with New York because it has "transact[ed] business within

1. Defendants' Memorandum of Law at 10.

2. *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir.1963).

3. N.Y.Civ.Prac.Law and Rules § 302 (McKinney 1972 & Supp.1982) (hereinafter "CPLR").

4. *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 456, 457 n. 5, 261 N.Y.S.2d 8, 18 n. 5, 209 N.E.2d 68, *cert. denied*, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965).

5. *Id.* 15 N.Y.2d at 457, 261 N.Y.S.2d at 18, 209 N.E.2d 68. *See also Sterling Nat'l Bank & Trust Co. v. Fidelity Mortgage Investors*, 510 F.2d 870, 873 (2d Cir.1975); *Louis Marx & Co. v. Fuji Seiko Co.*, 453 F.Supp. 385, 389 (S.D.N.Y.1978).

6. *Lehigh Valley Indus. v. Birenbaum*, 527 F.2d 87, 92 (2d Cir.1975); *Louis Marx & Co. v. Fuji Seiko Co.*, 453 F.Supp. 385, 389 n. 8 (S.D.N.Y. 1978).

the state."[7] Plaintiff relies on the two occasions Oil Producers was present in New York through its officers at which time plaintiff claims that the contract was substantially negotiated and drafted, and acts taken in furtherance of the performance of the contract occurred. Defendants argue otherwise, stating that the New York meetings were "inconsequential ... [because] [t]he contract was primarily negotiated and ultimately executed outside of New York."[8] There is no dispute, however, that Oil Producers, through its officers Wallace and Williams, was present in New York on one occasion to further negotiate and consummate the contract, and on another to effect a public offering of its securities with respect to which plaintiff was to act as the consultant under the contract. While the defendants minimize the significance of the first New York meetings, the fact is that they resulted in a draft agreement where previously there had only been discussions. At those meetings, the parties concluded the substance of the agreement that forms the hard core of this litigation.[9] That the discussions immediately preceding the drafting, the drafting itself, and the substance of the finalized agreement were concluded in New York is significant for jurisdictional purposes. The circumstance that Williams and Wallace signed the contract in Newark at a hotel where they were staying for their travel convenience does not detract from the force of their activities in New York in negotiating and concluding the final terms of the contract. Aside from what the defendants themselves describe as "minor handwritten modifications" to the draft, the fact is that it became the final agreement between the parties. This alone would appear sufficient to establish New York jurisdiction, but there is more. After approval by its attorneys and accountants of the underwriting documents which had been prepared by plaintiff, Oil Producers, through its officers, returned to New York a second time where, through introductions effected by plaintiff, they engaged in discussions with potential underwriters. That those discussions were unsuccessful does not diminish their importance for jurisdictional purposes. Indeed, considering the totality of Williams' and Wallace's activities at the New York meetings, the Court finds that Oil Producers engaged in "purposeful and meaningful"[10] contacts within the state, sufficient to subject it to New York State jurisdiction.[11] Oil Producers motion to dismiss for lack of jurisdiction, therefore, is denied.

### (b) Wallace and Williams

■■■■ Plaintiff's contention that Wallace and Williams, in their individual capacities, are subject to New York jurisdiction rests on three theories. First, their presence in New York during the previously discussed

---

7. CPLR 302(a)(1).

8. Defendants' Memorandum of Law at 19-20.

9. The importance of this meeting is underscored in light of plaintiff's uncontested statement that Payne was never its agent or employee. Indeed, Payne was apparently only paid a finder's fee by Trafalgar, but his travel expenses to and from New York were paid by defendants. Furthermore, Payne is now employed by Oil Producers. See Affidavit of Neal Bruckman ¶¶ 4, 6-8. Thus, the only face to face negotiations between the parties took place during this New York meeting.

10. J. Baranello & Sons v. Hausmann Indus., 86 F.R.D. 151, 158 (E.D.N.Y.1980).

11. See, e.g., Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958); Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68, cert. denied 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965); Milton R. Barrie Co. v. Levine, 54 A.D.2d 642, 387 N.Y. S.2d 627, 628 (1st Dep't 1976); Income Fund of Boston, Inc. v. F.H. Vahlsing, Inc., 49 A.D.2d 724, 372 N.Y.S.2d 658 (1st Dep't 1975); Decisionware, Inc. v. Systems Equipment Lessors, Inc., 45 A.D.2d 971, 359 N.Y.S.2d 586 (2d Dep't 1974); Lehigh Valley Indus. v. Birenbaum, 527 F.2d 87, 91 (2d Cir.1975); Liquid Carriers Corp. v. American Marine Corp., 375 F.2d 951 (2d Cir.1967); Mattgo Enterprises, Inc. v. Aaron, 374 F.Supp. 20, 24-25 (S.D.N.Y.1974), appeal denied, 516 F.2d 896 (2d Cir.1975); National Iranian Oil Co. v. Commercial Union Insur. Co., 363 F.Supp. 129, 132 (S.D.N.Y.1973). Cf. Parke-Bernet Galleries, Inc. v. Franklyn, 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (Ct.App.1970).

meetings. This ground must fail, however, because the individuals travelled to New York solely in their corporate capacities. "It is well established that a corporate officer acting on corporate business does not thereby become amenable to suit in his or her personal capacity in that jurisdiction."[12] The only proffered evidence that Wallace or Williams acted individually is that, at the time of the appearances in New York, they were the sole shareholders of Oil Producers. More than this, however, is required to pierce the corporate veil for jurisdictional purposes.[13]

■ Second, plaintiff contends that Wallace and Williams committed a tortious act within the state by making fraudulent misrepresentations in order to induce plaintiff to enter into the contract and thus are subject to jurisdiction under CPLR 302(a)(2).[14] The essence of the alleged misstatements is that Wallace and Williams represented that Oil Producers would satisfactorily perform the contract. Thus, plaintiff is merely attempting to transform a breach of contract into a tort for jurisdictional purposes. Such characterizations are not a basis to ground jurisdiction under New York's long arm statute.[15] As aptly stated by Chief Judge Weinstein:

> Accepting plaintiff's theory would have the effect of an unwarranted and unintended extension of "long arm" jurisdiction to almost any contract action where plaintiff was a New York domiciliary.

Whether or not the reach would be unconstitutional, it would be contrary to legislative design as revealed in CPLR 302.[16]

■ Finally, plaintiff contends that there is jurisdiction over the individual defendants under CPLR 302(a)(3). In relevant part, that section of the long arm statute empowers a court to exercise personal jurisdiction over a non-resident who (1) commits a tortious act outside of the state that (2) causes injury to a person or property within the state, so long as the non-resident (3) expects or should reasonably expect the act to have consequences in the state, and (4) derives substantial revenues from interstate commerce.[17] Each element is essential. Because plaintiff has failed to proffer sufficient evidence that the individual defendants come within the fourth element, it is dispositive of the issue.

Plaintiff claims that the interstate commerce nexus is satisfied because the public offering of Oil Producers' stock substantially increased the value of the shares held by Wallace and Williams, and because the stock was offered in 10 states. Without any citation to authority, plaintiff concludes that such conduct is a sufficient basis for holding that defendants derive substantial revenue from interstate commerce as required by statute. Such is not New York law. "Substantial revenue" is a relative concept, dependent upon the overall nature of defendants' business,[18] and, as in analo-

**12.** *Louis Marx & Co. v. Fuji Seiko Co.,* 453 F.Supp. 385, 389 (S.D.N.Y.1978).

**13.** *Lehigh Valley Indus. v. Birenbaum,* 527 F.2d 87, 92 (2d Cir.1975); *Louis Marx & Co. v. Fuji Seiko Co.,* 453 F.Supp. 385, 389 (S.D.N.Y.1978).

**14.** CPLR 302(a)(2) provides that a court can exercise jurisdiction over any non-domiciliary who in person or through an agent "commits a tortious act within the state."

**15.** *Cf. Hargrave v. Oki Nursery, Inc.,* 636 F.2d 897, 899 (2d Cir.1980) (and cases cited therein).

**16.** *Stanat Mfg. Co. v. Imperial Metal Finishing Co.,* 325 F.Supp. 794, 796 (E.D.N.Y.1971). *See Amigo Foods Corp. v. Marine Midland Bank,* 39 N.Y.2d 391, 384 N.Y.S.2d 124, 127, 348 N.E.2d 581 (Ct.App.1976); *Old Westbury Golf & Coun-*

*try Club Inc. v. Mitchell,* 44 Misc.2d 687, 254 N.Y.S.2d 679, 682 (Sup.Ct. Nassau Co.1964), *aff'd without opinion,* 24 A.D.2d 636, 262 N.Y.S.2d 438 (2d Dep't.1965), *aff'd mem.* 18 N.Y.2d 670, 273 N.Y.S.2d 418, 219 N.E.2d 868 (Ct.App. 1966); *Schenin v. Micro Copper Corp.,* 272 F.Supp. 523 (S.D.N.Y.1967). *But see Hoard v. U.S. Paint, Lacquer & Chem. Co.,* 44 Misc.2d 72, 253 N.Y.S.2d 89 (Sup.Ct.Monroe Co.1964).

**17.** CPLR 302(a)(3)(ii).

**18.** *See, e.g., Allen v. Canadian General Elec. Co.,* 65 A.D.2d 39, 410 N.Y.S.2d 707, 708 (3d Dep't 1978) *aff'd mem.* 50 N.Y.2d 935, 431 N.Y.S.2d 526, 409 N.E.2d 998 (Ct.App.1980); *Parker v. Green,* 63 A.D.2d 977, 406 N.Y.S.2d 112, 113 (2d Dep't 1978); *Allen v. Auto Specialties Mfg. Co.,* 45 A.D.2d 331, 333, 357 N.Y.S.2d

gous circumstances, "connotes a course of earning ... as opposed to a single, albeit substantial, incident."[19] Here the sole basis for concluding that the individuals derive substantial revenue from interstate commerce is the benefit that inured to them as shareholders by reason of the public offering. More is required to satisfy the statute. First, there is no support for the proposition that an appreciation in the value of stock is "revenue" to shareholders for purposes of the statute. Moreover, were the Court to so hold, virtually every shareholder of a publicly traded company who derives substantial revenues as a result of his holdings may be subject to New York jurisdiction under the interstate commerce nexus of the long arm statute. Such an interpretation would exceed the outer limits of constitutionality. Second, the Court is not convinced that a single isolated transaction, one not likely to be repeated, and clearly not part of the shareholders' normal business operations, provides a sufficient foundation for exercising jurisdiction.[20] The motion of defendants Wallace and Williams to dismiss for lack of personal jurisdiction is granted.

### (c) Tennessee Capital

Plaintiff asserts in personam jurisdiction over Tennessee Capital pursuant to CPLR 302(a)(3) under which, as already noted, long arm jurisdiction over a nondomiciliary who commits a tortious act outside the state attaches, provided other elements of the statute are satisfied. Here the alleged tortious act committed is the intentional interference by Tennessee Capital with the contract between plaintiff and Oil Producers, and the alleged appropriation by Tennessee Capital of the financial consultant services previously rendered by Trafalgar to Oil Producers with respect to the contract. Whatever the nature of the alleged acts, all occurred either in the offices of Tennessee Capital in Memphis, or in Texas at Oil Producers' offices. Thus, the first élement of the statute is satisfied. So, too, there is no dispute that Tennessee Capital derives substantial revenues from interstate commerce. It is a regional brokerage and investment banking firm that in the normal course of business underwrote the public offerings of Oil Producers' common stock as well as that of other companies. As to the vital element of whether the tortious act committed in Tennessee caused injury to person or property within New York State, the statute itself does not define "injury within the state," an issue which New York's highest court has found "difficult,"[21] and our Court of Appeals "complicated."[22]

While it is clear that a negligent act committed outside the state which has a physical impact on person or property within the state is sufficient to meet the jurisdictional requirement, this has not been so as to commercial torts such as alleged by plaintiff against Tennessee. The troubling question in the instance of a commercial tort is whether New York is the locus of the injury—whether the impact of the tort occurred within the state. The sole contention by plaintiff is that the damage resulting from the defendant's tortious act in Tennessee was sustained here in New York where it has its only place of business.

547, 550 (3rd Dep't 1974). *Cf. Nichols v. Surgitool, Inc.,* 419 F.Supp. 58, 62 (W.D.N.Y.1970); *Chunky Corp. v. Blumenthal Bros. Chocolate Co.,* 299 F.Supp. 110, 115 (S.D.N.Y.1969); *Tonelli v. Chase Manhattan Bank,* 49 A.D.2d 731, 372 N.Y.S.2d 662 (1st Dep't 1975).

**19.** McLaughlin, Practice Commentaries to New York CPLR, 302:23 at 90 (1972) (citing *Chunky Corp. v. Blumenthal Bros. Chocolate Co.,* 299 F.Supp. 110 (S.D.N.Y.1969); *Gillmore v. J.S. Inskip, Inc.,* 54 Misc.2d 218, 282 N.Y.S.2d 127 (Sup.Ct.Nassau Co.1967) (discussing CPLR 302(a)(3)(i)).

**20.** *Cf. Darienzo v. Wise Shoe Stores, Inc.,* 74 A.D.2d 342, 427 N.Y.S.2d 831 (2d Dep't 1980) (jurisdiction not found on basis of isolated event; statute requires showing of "discernible effort ... in the forum state").

**21.** *Sybron Corp. v. Wetzel,* 46 N.Y.2d 197, 205, 413 N.Y.S.2d 127, 131, 385 N.E.2d 1055 (Ct. App.1978).

**22.** *American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.,* 439 F.2d 428, 432 (2d Cir.1971).

Does this satisfy the requirement of "injury to person or property within the state?"

It is evident that each case must turn upon its individual facts. Counsel have not submitted nor has the courts independent research unearthed a case that parallels the fact pattern of the instant one. Prior to 1978, New York Courts had held that commercial torts did not cause "injury within the State" for purposes of CPLR 302(a)(3).[23] However, that year in *Sybron Corp. v. Wetzel*,[24] the New York Court of Appeals interpreted the statute to encompass commercial torts but emphasized that the tortious inducement of a breach of a contract must have an impact or locus within the state. There, the defendant corporation was charged with inducing a tortious breach of an employee's obligation to his former employer, the plaintiff. The employee, also named as a defendant, had over many years of his former employment became possessed of trade secrets. The charge was a conscious plan by the enticing corporation to use the purloined trade secrets to make valuable sales to plaintiff's New York customers. In upholding jurisdiction under the long arm statute against the defendant nondomiciliary corporation the Court stressed that of "critical" importance was the plaintiff manufactured its products in New York; that the alleged trade secrets were acquired by the employee in New York; that defendant then intended to make valuable sales to plaintiff's New York customers; and that "the economic injury which plaintiff seeks to avert stemmed from the threatened loss of important New York customers".[25] The facts of the instant case in no respect even approach those of *Sybron*.

There, Chief Judge Breitel referred to and discussed two cases in our Court of Appeals which held that remote or consequential injuries which occur in New York because plaintiff is domiciled, incorporated or doing business there is not sufficient to satisfy jurisdictional requirements. The Court turns to these cases for guidance. *American Eutectic Weld Alloys Sales Co. v. Dytron Alloys Corp.*,[26] was an action by a New York corporation against a Michigan corporation which allegedly had induced two former employees of plaintiff, who were also named as defendants, to breach their employment agreement with plaintiff in order to improperly entice plaintiff's customers, and otherwise unfairly compete. Those customers who had been serviced by the former employees were located in Kentucky and Pennsylvania. Plaintiff sought to subject the defendant to New York jurisdiction under section 302(a)(3)(ii). The basis of the claim of jurisdiction was that the non resident defendant corporation's acts of stealing plaintiff's customers in Kentucky and Pennsylvania resulted in injury to the plaintiff in New York. Then Judge, now Chief Judge Feinberg writing for the Court of Appeals stated that for jurisdictional purposes it was necessary "to locate the situs of the injury".[27] He observed that while there was no question that plaintiff suffered some harm in New York since a sale lost anywhere in the United States affects plaintiff profits, "[b]ut that sort of derivative commercial injury in the state is only the result of plaintiff's domicile here."[28] Then Judge Feinberg quoted from the other Second Circuit Court of Appeals decision to which Judge Breitel had referred to in *Sybron* as follows:

> Zoellner lost its scrap metal in New Orleans. The process of reasoning by which Zoellner seeks to convert this New Orleans injury into an injury within New York defies restatement. However, even if it is assumed that some injury in New York flowed from the New Orleans inju-

23. See *Sybron Corp. v. Wetzel*, 61 A.D.2d 697, 701, 403 N.Y.S.2d 931, 933 (4th Dep't), *rev'd*, 46 N.Y.2d 197, 413 N.Y.S.2d 127, 385 N.E.2d 1055 (Ct.App.1978).

24. 46 N.Y.2d 197, 413 N.Y.S.2d 127, 385 N.E.2d 1055 (Ct.App.1978).

25. *Id.* 46 N.Y.2d at 205, 413 N.Y.S.2d at 131, 385 N.E.2d 1055.

26. 439 F.2d 428 (2d Cir.1971).

27. *Id.* at 432–33.

28. *Id.* at 433.

ry, jurisdiction would be lacking. Section 302(a)(3) is not satisfied by remote or consequential injuries which occur in New York only because the plaintiff is domiciled, incorporated or doing business in the state. *See Black v. Oberle Rentals, Inc.,* 55 Misc.2d 398, 285 N.Y.S.2d 226 (1967).[29]

Judge Feinberg also took particular note of, and quoted from the last cited New York case:

> Conceptually it is difficult for this Court to hold that a personal or property injury in another state by virtue of a tortious act committed in that state can be said to have suffered some injury within the State of New York simply because he is domiciled here. In other words, Section 302(a)(3) CPLR looks to the imparting of the original injury within the State of New York and not resultant damage, in order that jurisdiction might be effectuated. To hold otherwise would open a veritable Pandora's Box of litigation subjecting every conceivable prospective defendant involved in an accident with a New York domiciliary to defend actions brought against them in the State of New York. This is hardly the minimal contact with the State prerequisite to the exercise of its power over a prospective defendant.[30]

One case decided by our Court of Appeals, *Hargrave v. Oki Nursery, Inc.,*[31] upon a surface reading would seemingly support jurisdiction based solely upon lost profits as constituting injury within the state. While that appears to be the ground of the decision, the facts indicate that defendant shipped diseased grape vines from California to New York to plaintiffs, who planted them in their New York vineyard. Despite defendant's representations, the vines were incapable of bearing grapes of adequate quality or quantity for plaintiffs' commercial wine production. Thus, it is clear that the diseased vines planted in plaintiffs' vineyard in New York, which, over a period of time, failed to ripen into a healthy product, constituted the injury within the state, which later caused the loss of profits. It is significant that the court specifically noted that *Hargrave* was "not a case where a defendant commits a business tort such as unfair competition or diversion of opportunities in one state and the ultimate result is the loss of profits to the plaintiff which is fortuitously located in another state."[32] The New York Court of Appeals has only recently echoed a similar message:

> [T]he residence or domicile of an injured party within a state is not a sufficient predicate for jurisdiction, which must be based upon a more direct injury within the state than the indirect financial loss resulting from the fact that an injured person resides or is domiciled there.[33]

Other than the alleged loss of profits, there simply is no locus or contact within the state upon which a claim of injury within the state can be predicated. The Court concludes that Tennessee Capital is not subject to jurisdiction within the State of New York under CPLR 302(a)(3), and its motion to dismiss is granted.

## THE ALTERNATIVE MOTION TO TRANSFER TO THE EASTERN DISTRICT OF TEXAS FOR THE CONVENIENCE OF PARTIES AND WITNESSES, AND IN THE INTEREST OF JUSTICE PURSUANT TO 28 U.S.C. § 1404(a)

The dismissal of the action against Tennessee Capital has simplified this mo-

---

**29.** *American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.,* 439 F.2d 428, 433 (2d Cir.1971) (*quoting Zoellner (New York) Corp. v. Tex Metals Co.,* 396 F.2d 300, 303 (2d Cir. 1968)) (citation omitted).

**30.** *Id.* at 434 (*quoting Black v. Oberle Rentals, Inc.,* 55 Misc.2d 398, 285 N.Y.S.2d 226, 229 (Sup.Ct. Onondaga Co.1967).

**31.** 636 F.2d 897 (2d Cir.1980).

**32.** *Id.* at 900 (citations omitted).

**33.** *Fantis Foods, Inc. v. Standard Importers,* 49

tion.[34] There is no issue that this action "might have been brought" in the Eastern District of Texas where Oil Producers maintain offices and transacts business. The defendant urges that Williams and Wallace, its principal officers, as well as its other witnesses all either work or reside there; that all its records and documents pertaining to the issues in the case are maintained there; and that a trial here will not only inconvenience witnesses, but disrupt the normal operations of its daily business operations. Plaintiff makes a substantially similar claim of inconvenience if the case is transferred to Texas. It emphasizes that it is a New York corporation; that its principal officer who negotiated the contract is a resident of and employed in this district, as are other witnesses who are knowledgeable with respect to matters that resulted in the contract and the drafting of the underwriting documents. In sum, the relative inconvenience is evenly balanced. One party will be more greatly inconvenienced depending upon where the trial is held. In this circumstance, under the applicable criteria [35] the plaintiff is entitled to the benefit of its choice of forum. The defendants motion for a transfer is denied.

---

N.Y.2d 324, 425 N.Y.S. 783, 787, 402 N.E.2d 122 (Ct.App.1978).

**34.** If Tennessee Capital had been found to be subject to New York jurisdiction, the Court would then have had to determine whether the Eastern District of Texas, where Tennessee Capital is allegedly not subject to service of process, is a district where the action "might have been brought." *See Foster-Milburn Co. v.*

*Knight,* 181 F.2d 949, 952 (2d Cir.1950); *Schacht v. Javits,* 53 F.R.D. 321, 323 (S.D.N.Y. 1971); *Jordan v. United States Lines, Inc.,* 291 F.Supp. 600, 601 (S.D.N.Y.1968); *Twentieth Century-Fox Film Corp. v. Taylor,* 239 F.Supp. 913, 923 (S.D.N.Y.1965).

**35.** *Schneider v. Sears,* 265 F.Supp. 257 (S.D.N.Y.1967).